UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>  vs.<br><br>MOSES CROWE,<br>JESSE WAR BONNETT and<br>BRENT SILK, JR.,<br><br>                  Defendants. | CR. 21-50058-JLV<br><br>ORDER |

**INTRODUCTION**

The government filed a legal memorandum in support of the admissibility of several statements under Fed. R. Evid. 801(d)(2)(E). (Docket 88). The defendants filed objections and legal memoranda in opposition to the government's brief. (Dockets 94, 95, 105, 106 & 107). The government filed a reply brief. (Docket 109). Following two hearings on the issues presented, the parties filed post-hearing briefs. (Dockets 135, 136, 138 & 139). For the reasons stated in this order, defendants' objections are granted in part and denied in part.

**PROCEDURAL HISTORY**

Defendants are charged by indictment with obstruction of justice against Gerald Baker, by assault, and aiding and abetting each other in the assault on December 26, 2020, in retaliation for Mr. Baker's testimony in the criminal trial of <u>United States v. Brendon Janis</u>, CR. 17-50076 (D.S.D. 2017), in violation of

18 U.S.C. §§ 1513(b)(1) & (c) and 2.  (Docket 1).  On November 29, 2021, just one day before the scheduled pretrial hearing, the government filed a legal memorandum in support of the admissibility of several statements under Fed. R. Evid. 801(d)(2)(E).  (Docket 88).  Because of the significance of the issues presented, the court postponed the pretrial conference and conducted two evidentiary hearings on December 10, 2021, and February 10, 2022.  (Dockets 121 & 131).  During the hearings, the court admitted, for purposes of those hearings only, several exhibits.  See Docket 125.

The exhibits which are the subject of the government's Rule 801(d)(2)(E) disclosure request are:

#13   Brent Silk email of January 4, 2021;

#14   Five Jesse War Bonnett emails;

#15   Kites[1] written by Wicahpe Milk to Brendon Janis;

#16   Note written by Brendon Janis;

#17   Kites written by Wicahpe Milk to Frank Milk;

#18   List of witnesses who testified at Mr. Janis' trial;

#19   Script prepared by Wicahpe Milk for Sam O'Rourke;

#20   Roster of inmates in cellblocks 3-4-5 at the Pennington County Jail on August 29, 2019;

#21   Roster of inmates in cellblocks 6-7-8 at the Pennington County Jail on August 29, 2019;

#23   Kite written by Brendon Janis to Wicahpe Milk;

---

[1] A "kite" is a handwritten note passed between inmates by other inmates in the same facility.  See Docket 135 at p. 6.

  #23 Kite written by Wicahpe Milk to Frank Milk; and

  #37 Kite (partial) written by Wicahpe Milk to Brendon Janis.

See Dockets 125 & 126.

## PARTIES' ARGUMENTS

Government's Position

  The government contends these exhibits are admissible at trial of the three defendants pursuant to Rule 801(d)(2)(E) because they were in a joint venture, an uncharged conspiracy, with Brendon Janis and Wicahpe Milk at the time each exhibit was prepared. (Docket 135 at p. 1). A video recording of the alleged assault of Mr. Baker at the Pennington County Jail by Mr. Crowe, Mr. War Bonnett and Mr. Silk on December 26, 2020, was also admitted for purposes of resolving the issues presented. See Docket 125, Exhibit 1.

  The government's evidence contends Wicahpe Milk and Brendon Janis were in the same drug conspiracy but separately indicted. (Docket 135 at p. 3). That is, "in late 2015 or early 2016," Wicahpe and Mr. Janis "were involved in the same methamphetamine distribution enterprise." Id. To emphasize this argument, the government points out that "[s]everal dozen of the witnesses who testified at Janis' trial in 2019 also testified at Milk's trial in 2021." Id. (references omitted).

  According to the government, the alleged victim in this case, Gerald Baker, "was a sub-distributor for the Milk-Janis drug conspiracy." Id. at p. 4. The government asserts Mr. Baker received methamphetamine from both Mr. Janis

3

and Wicahpe, as well as Wicahpe's cousin, Frank Milk.[2]  Id.  Mr. Baker was separately indicted in October 2016 for conspiracy to distribute methamphetamine and possession of a firearm by a prohibited person.  See United States v. Baker, CR. 16-50130, Docket 2 (D.S.D. 2016).  According to the government, pursuant to a cooperation agreement with the government, Mr. Baker testified during Mr. Janis' trial in 2019.  (Docket 135 at p. 4).[3]  Mr. Baker also testified in Wicahpe's trial in 2021.  Id.

Just a few days prior to the 2020 assault, the government's evidence indicates Mr. Baker was confronted by several other inmates in his cell block and directed to look at a kite containing his name on a "snitch list" of inmates who testified against Mr. Janis during the trial in 2019.  Id.  When provided with some of the other names on the snitch list with Mr. Baker's name, FBI Special Agent Dan Cooper recognized those names as inmates who were involved in the Milk-Janis drug distribution conspiracy or other investigations in the same communities.  Id. at pp. 11-12 (reference omitted).  The government does not contend that either of the lists of names in the exhibits before the court were the lists shown to Mr. Baker.

---

[2]Wicahpe Milk will be referred to as "Wicahpe" or "Milk," while Frank Milk will be referred to either as "Frank" or "Frank Milk."

[3]All separate docket citations are references to the docket entries in CM/ECF in this case.

The government submits the defendants' objections to the government's proposed exhibits "confuse[] a criminal conspiracy under 21 U.S.C. § 846 with the conspiracy contemplated by Federal Rule of Evidence 801(d)(2)(E)." Id. at p. 18.  The government contends "there is no requirement that a criminal conspiracy be charged in the indictment . . . . Nor is there any requirement that the government prove the defendants received explicit instructions directly from Janis or Milk to prove the existence of a conspiracy to obstruct justice."  Id. Any concert of action, according to the government, is sufficient to show the "likelihood of illicit association between the declarant and the defendants."  Id. at p. 19 (citing United States v. Kelley, 526 F.2d 615, 618 (8th Cir. 1975)).

The government argues the evidence presented "has shown by a preponderance that Janis and Wicahpe engaged in a conspiracy to obstruct justice and that the defendants Crowe, Silk, and War Bonnett, were their coconspirators in that joint venture."  Id.  Viewed together, the defendants' own words, the kites between Mr. Janis, Wicahpe and Frank Milk, and the defendants' conduct, establish in the government's view that the "statements by all five coconspirators, during and in furtherance of the joint venture to assault a cooperating witness, are admissible at trial as substantive evidence under Fed. R. Evid. 801(d)(2)(E)."  Id.

Defendants' Oppositions to the Government's Request

All three defendants filed post-hearing briefs in opposition to the government's request.[4] (Dockets 136, 138 & 139). Defendants acknowledge Rule 801(d)(2)(E) does not require that a conspiracy be charged "to invoke the conspirator statement exception." (Docket 136 at p. 7) (referencing United States v. Miller, 644 F.2d 1241, 1244 n.5 (8th Cir. 1981)). See also Dockets 138 at p. 7 & 139 at p. 1. Defendants submit Miller requires "the close, personal, specific interactions between the parties that are required . . . before the admission of co-conspirator statements as evidence in a criminal trial. It is this close, personal, and specific interaction between the parties that shows the concert of action that is required, not a charge of criminal conspiracy." (Docket 136 at p. 9). See also Dockets 138 at p. 2 & 139 at p. 1.

Each of the defendants' arguments will be addressed where differences arise but the court considers each of their legal arguments relevant to defendants' opposition to the admissibility of Rule 801(d)(2)(E) evidence.

A.   Brent Silk

First, Mr. Silk submits he was not a party to or part of the Janis-Milk drug conspiracy described by the government. (Docket 136 at p. 3). Mr. Silk argues that because of this shortcoming in the government's evidence, it cannot meet its burden under the co-conspirator statement rule. (Docket 136 at p. 3)

---

[4]The court will address the defendants' prehearing briefing if necessary to resolve the issues presented. See Dockets 94, 105, 106 & 107.

(referencing United States v. Bell, 573 F.2d 1040, 1043 (8th Cir. 1978); Bourjaily v. United States, 483 U.S. 171, 175 (1987)).

Second, despite the testimony of FBI Special Agent Cooper that snitches are greenlighted once they return to the Pennington County Jail, the defendants assert Mr. Baker was in the jail "for several weeks before the [December 26, 2020] altercation." Id. at p. 4. Defendants contend the evidence presented shows that Mr. Baker was returned to custody because of his arrest on new charges and absconding from home confinement imposed by a prior conviction. Id. at pp. 4-5. Defendants submit Mr. Baker was not, as suggested by the government, transported back from federal custody to testify locally. Id. at p. 5. In other words, according to the defendants the inmates knew Mr. Baker was in jail not to testify but because of his own conduct. Id.

If Mr. Baker was shown a snitch list upon his detention as suggested by the government's evidence, the defendants submit he would have been assaulted at that time not several days later. Id. Defendants argue the lack of the snitch list as an exhibit and Mr. Baker's failure to mention having seen a snitch list prior to the December 26, 2020, assault supports the conclusion that no list existed. Id. "It is much more plausible" in defendants' view that Mr. Baker was assaulted for any number of "indiscretions" developed during his current incarceration then later "hatched a story and . . . said there was a note." Id. at p. 6.

Addressing Mr. Silk's email of January 4, 2021, he suggests calling Mr. Baker a "rat" was because defendant ended up in administrative segregation after the December 26, 2020, assault and was charged in state court with simple assault on December 28, 2020.  Id. (referencing Dockets 126 at p. 2 & 136-1 at p. 1).  Mr. Baker was a "rat," according to Mr. Silk, not because of Mr. Baker's testimony in Mr. Janis' 2019 trial but because Mr. Baker identified Mr. Silk as one of the December 26, 2020, assailants.  Id.

Mr. Silk contends the government is required first to show the existence of "a conspiracy," and second that he "was a member of the conspiracy" at the time Mr. Janis and Wicahpe made their 2019 kite statements.   (Docket 136 at p. 12). While there is testimony Mr. Silk was in the Pennington County Jail in August 2019 at the same time as Mr. Janis and Wicahpe, the defendant submits the "extensive list of inmates involved in" the confrontation with Mr. O'Rourke did not include Mr. Silk.  Id. at p. 13.  In other words, in Mr. Silk's view of the evidence, the government "succeeded in showing that [he] had nothing to do with it."  Id.  Mr. Silk asserts the government failed to present any evidence that he "was aware of the purposes of an agreement, [or] that he voluntarily participated in an agreement in August of 2019."  Id.  "Nothing in the 2019 [kites] . . . discuss the planning, organizing, direction or the protection or concealment of anything about a December [2020] retaliatory assault of Gerald Baker nor do they ever discuss or include Brent Silk."  Id. at p. 14.

8

Mr. Silk further argues there is no evidence he was aware of the communications between Wicahpe and Frank Milk in the spring of 2021.  Id.  Mr. Silk submits the government presented no evidence that he and Wicahpe ever communicated.  Id. at p. 14.

Further, Mr. Silk argues there is no basis to conclude Wicahpe was asking Frank Milk to thank Jesse War Bonnett for assaulting Mr. Baker as Frank Milk's kites to Wicahpe "were not saved as evidence."  (Docket 136 at p. 15).  Without that context, Mr. Silk submits it would be "unfairly damaging if accepted at face value" to conclude Wicahpe's kite was an expression of gratitude for the assault of Mr. Baker.  Id.  Even if that conclusion is permitted, Mr. Silk argues the kite is still not admissible as "[a]ny statement made after the alleged assault is not a statement in furtherance of the conspiracy as the objective of the conspiracy would have ended."  Id.

B.   Jesse War Bonnett

Mr. War Bonnett argues there is no evidence he was a party to or part of the Janis-Milk drug conspiracy described by the government.  (Docket 139 at p. 1).  Mr. War Bonnett also submits there is no evidence he "knew that Frank Milk was writing stories about [Mr. War Bonnett] or that the message from [Wicahpe] was ever relayed to Defendant War Bonnett."  (Docket 139 at p. 2).

Mr. War Bonnett contends his January 20, 2021, email about breaking another inmate's jaw and getting into trouble was not about a retaliatory assault but an accurate description of Mr. Baker's injuries.  (Docket 139 at p. 3)

(referencing Docket 126 at p. 4). Similarly, he explains being in administrative segregation because Mr. Baker was a snitch about the fight. Id. When speaking of Mr. Baker "as a snitch," Mr. War Bonnett asserts "that matches up with his understanding that Baker reported . . . [having] been assaulted and named his assailants, which is against the jail honor code, and therefore rendered Baker a snitch." Id. at p. 4. "The statements associated with such accusations, have nothing to do with Janis or [Wicahpe]," in Mr. War Bonnett's view "but rather are a reflection of the negative consequences War Bonnett suffered from Baker naming him as one of his assailants." Id.

    C.    Moses Crowe

Mr. Crowe argues the government engages in "wild speculation meant to bootstrap" his relationship with Mr. Janis and Wicahpe. (Docket 138 at p. 3). That is, simply because a former co-defendant of Mr. Crowe, Ranson Long Pumpkin, was in the group with Wicahpe that surrounded Mr. O'Rourke and "threatened him not to testify against Janis" the government attempts "to create an association between" Wicahpe, Mr. Janis and Mr. Crowe. Id.

Mr. Crowe also objects to the government's attempt to use Mr. Silk's email to create a joint venture for the purpose of retaliating against a federal witness. Id. at p. 4 (referencing Docket 126 at p. 2). Mr. Crowe asserts his co-defendant's "bragging in a barely-intelligible email to which Crowe is not a party cannot be fairly construed as describing a concert of action amongst [Wicahpe], Janis, and Crowe to retaliate against Baker for his cooperation with the government." Id.

Mr. Crowe submits "[n]othing in [the] email can be fairly characterized as evidence of that fact." Id. at p. 5.

"The government's final proffer of circumstantial evidence" according to Mr. Crowe is that Mr. War Bonnett, who knows members of the Crowe family, expressed his opinion in an email "that snitches 'just be everywhere you know.' " Id. at p. 5 (referencing Docket 126 at p. 4).  Mr. Crowe argues the fact that his co-defendant knows members of the Crowe family and has this opinion about snitches "is not evidence that Crowe, [Wicahpe], and Janis were joint venturers in a conspiracy to assault Baker in retaliation for his cooperation with the government." Id.

"Even accepting as true that Crowe was the assailant who called Baker a 'snitch' and told him 'that is what you get for testifying on Brendon,' " Mr. Crowe argues "it is not as if the concept of assaulting cooperating witnesses in a jail setting was invented by [Wicahpe] and Janis and that the only explanation for a cooperating witness being assaulted is that the assaulter joined the Milk-Janis conspiracy." Id. at p. 9.  Mr. Crowe suggests the government's theory is that Wicahpe and Mr. Janis "wanted to see Baker assaulted in retaliation for his cooperation with the government . . . ; Crowe assaulted Baker; therefore, Crowe must have been a member of the Milk-Janis joint venture." Id. at p. 10.  Mr. Crowe concludes "[p]ost hoc ergo propter hoc is an interesting theory under the

11

circumstances, but it is not supported by sufficient evidence."⁵  Id. (italics in original).

Even if the government can establish a conspiracy between the three defendants, Mr. Crowe submits the government's injection of the seven-year Milk-Janis drug conspiracy and efforts to retaliate against drug witnesses who testified in their trials "would confuse the issues, mislead the jury, waste time, and be outrageously prejudicial."  Id. at p. 10 (referencing Fed. R. Evid. 403). "Forcing the defense to introduce evidence of the many other allegations of Crowe's jailhouse skirmishes to prove there are many reasons he might punch a person in the face other than his involvement in the Milk-Janis conspiracy is pretty much the hornbook definition of undue prejudice."  Id. at p. 11.

## ANALYSIS

Federal Rule of Evidence 801(d)(2)(E) provides a statement "is not hearsay [if] . . . [t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy."  The rule clarifies that "[t]he statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it[.]"  Fed. R. Evid. 801(d)(2).

The court is required to preliminarily determine whether this evidentiary matter has been "established by a preponderance of proof."  Bourjaily, 483 U.S.

---

⁵The Latin phrase "post hoc, ergo propter hoc" means "after this, therefore because of this" or "because an event occurred first, it must have caused this later event."  https://www.merriam-webster.com/post hoc ergo propter hoc/. The phrase is "used to describe a fallacious argument."  Id.

12

at 175. "[T]he the evidentiary standard is unrelated to the burden of proof on the substantive issues [in a criminal case] . . . . The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration." Id. "[T]he Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E)." Id. at 183-84.

"[T]he admissibility of an alleged coconspirator's statement is . . . a preliminary question for the judge, not the jury, to decide." Bell, 573 F.2d at 1043 (referencing Fed. R. Evid. 104). "After a ruling on the record that the out-of-court declaration is admissible under Rule 801(d)(2)(E), the court may submit the case to the jury." Id. at 1044. The court must instruct the jury "that the government is required to prove the ultimate guilt of the defendant beyond a reasonable doubt. An appropriate instruction on credibility should be given, and the jury should be cautioned with regard to the weight and credibility to be accorded a coconspirator's statement." Id.

"The term conspiracy as used in Rule 801(d)(2)(E) is distinct from the substantive law concept. Thus, it is well established that the crime of conspiracy need not be charged in order to invoke the conspirator exception." Miller, 644 F.2d at 1244 n.5 (references omitted). "The rule may more properly

13

be thought of as a 'joint venture' or a 'concert of action' exception." Id. (reference omitted).

Defendants may not be convicted of obstructing justice by retaliating against Mr. Baker simply through their association with Wicahpe or Mr. Janis, or both. United States v. Johnson, 28 F.3d 1487, 1497 (8th Cir. 1994). Direct and circumstantial evidence of defendants' association with Wicahpe and Mr. Janis is necessary "to show the nature and extent of the defendants' association" with Wicahpe and Mr. Janis, "which in turn bears on whether" the defendants "conspired" with Wicahpe and Mr. Janis. Id. (internal quotation marks, brackets and citations omitted). "[A]s a preliminary matter, there must be substantial, independent evidence of the conspiracy, at least enough to take the question to the jury." United States v. Frol, 518 F.2d 1134, 1136 (8th Cir. 1975) (internal citation omitted). The court is granted "wide discretion and need be satisfied only that the independent evidence is credible and sufficient to support a finding of a joint undertaking." Id. (citing United States v. Sanders, 463 F.2d 1086, 1088 (8th Cir. 1972). "The independent evidence of illicit association may be totally circumstantial." Id. (citing Sanders 463 F.2d at 1088).

The government's proof of independent evidence to support its claim of a joint venture between Mr. Janis, Wicahpe and the three defendants consists of the following:

- Mr. Silk was in the same cell block pod as Wicahpe immediately before and after the completion of the Janis trial in which Mr. Baker testified. (Docket 126 at p. 25 [Exhibit 20]);

14

- Saul Crowe, Mr. Crowe's brother, was in the same cell block pod as Wicahpe immediately before and after the completion of the Janis trial in which Mr. Baker testified.  Id.; see also Docket 121 at p. 28:18-13;

- Ranson Long Pumpkin, Mr. Crowe's co-defendant in a previous case, was in the same cell block pod as Wicahpe immediately before and after the completion of the Janis trial in which Mr. Baker testified.  (Docket 126 at p. 25 [Exhibit 20]);

- Prior to leaving to testify in the Janis trial, Sam O'Rourke was housed in the same cell block pod as Wicahpe.  (Docket 121 at pp. 24:22-25:1); and

- Wicahpe, Mr. Long Pumpkin, Wanblee Morris, Duane Starkey and other inmates on the same cell block pod confronted and threatened Mr. O'Rourke just before he left to testify in the Janis trial.  Id. at pp. 27:19-25; 28:3-5 & 13-17.

There is insufficient independent evidence "to create a jury question over whether an unlawful association existed between" the defendants and Wicahpe or Mr. Janis, or both, for the purpose of retaliating against Mr. Baker for his testimony in the Janis trial.  Frol, 518 F.2d at 1137.  The defendants may have been in a joint venture to assault Mr. Baker in retaliation for his testimony in the Janis trial but that association does not constitute independent evidence that the defendants were in a joint venture with Mr. Janis or Wicahpe to achieve the same goal.

The kites and other exhibits associated with Wicahpe and Mr. Janis provide no direct or circumstantial corroboration of any one or more of the three defendants in Wicahpe's and Mr. Janis's apparent anger at witnesses for testifying in the Janis trial.  Nor do their kites provide any guidance as to where the government, and ultimately the court, should go to find independent

verification of the defendants' joint venture with Wicahpe and Mr. Janis. Whether individually or taken together, the kites and other exhibits do not provide independent proof of a joint venture.   Fed. R. Evid. 801(d)(2)(E); Frol, supra.

In addition to not being admissible for the reasons stated above, Exhibit 17, Wicahpe's kite to Frank Milk asking him to thank Jesse War Bonnett is not admissible for two more reasons.   First, the court and ultimately a jury would have to speculate that the kite was specifically responding to Mr. War Bonnett's alleged assault of Mr. Baker.   Second, the statement was not made "during and in furtherance of the conspiracy."   Fed. R. Evid. 801(d)(2)(E).   If a conspiracy or joint venture existed between the defendants and Wicahpe to assault Mr. Baker, that event already occurred.   The objective of the conspiracy had been satisfied. The thank you statement by Wicahpe did not "advance the objectives of the conspiracy."   United States v. Sutherland, No. CR.07-50106-02, 2008 WL 4858322, at *3 (D.S.D. Nov. 10, 2008) (internal citation omitted).

The same analysis applies to the remainder of Wicahpe's kites to Frank Milk.   Each of those kites written by Wicahpe to Frank Milk were written after the assault of Mr. Baker.   United States v. Yow, 465 F.2d 1328, 1331 (8th Cir. 1972) (the statement is not admissible under Rule 801(d)(2)(E) as it was made after the "objectives of concert of action were . . . achieved.").

The court now addresses the government's proposed Exhibits 13 and 14, the emails of Mr. Silk and Mr. War Bonnett.   (Docket 126 at pp. 1-9).   "A

16

statement that simply informs a listener of the declarant's criminal activities is not made in furtherance of the conspiracy." United States v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994).

While the statements in Exhibit 3 are not hearsay as to Mr. Silk under Rule 801(d)(2)(A) and are admissible as to him, the statements are not admissible against his co-defendants under Rule 801(d)(2)(E). That email was not made "in furtherance of the conspiracy." Mitchell, 31 F.3d at 632. Mr. Silk's email may constitute a personal admission of criminal conduct but it must be redacted to eliminate the identities or names of the other assailants of Mr. Baker. If the government intends to offer Exhibit 3, the court requires the redaction of "sco [Moses Crowe], and Jesse [War Bonnett]." The court will instruct the jury that Exhibit 3 may only be considered as to Mr. Silk and not the other two defendants. The parties are invited to submit a cautionary instruction for that purpose.

If the government intends to offer any part of Exhibit 4, the court finds the first page, Docket 126 at p. 4, is admissible under Rule 801(d)(2)(A) but not 801(d)(2)(E). Page two, id. at p. 6, being addressed to Moses Crowe's mother, Corolana McCloskey, and the passing reference to Moses Crowe, is not relevant under Fed. R. Evid. 401 and if relevant, is inadmissible under Fed. R. Evid. 403 as the references would be unfairly prejudicial to Mr. Crowe. Similarly, page three, id. at p. 7, being addressed to Corolana McCloskey and intended for "[P]anda," Moses Crowe's sister, is not relevant under Rule 401 and if relevant, is

17

inadmissible under Rule 403 as the references would be unfairly prejudicial to Mr. Crowe. Page four, id. at p. 9, is irrelevant under Rule 401, as the emails between Wicahpe and Frank Milk are not admissible. The court will instruct the jury that Exhibit 4 may only be considered as to Mr. War Bonnett and not the other two defendants. The parties are also invited to submit a cautionary instruction for purposes of Exhibit 4.

## ORDER

Based on the above analysis, it is

ORDERED that defendants' objections (Docket 94, 95 & 107) are granted in part and denied in part.

IT IS FURTHER ORDERED that defendants' objections are sustained in part as to Exhibits 3 & 4 consistent with this order.

IT IS FURTHER ORDERED that defendants' objections are sustained as to Exhibits 15, 16, 17, 18, 19, 20, 21, 23, 24 & 37.

IT IS FURTHER ORDERED that Mr. War Bonnett's joinder motions (Dockets 106 & 139) are granted.

NOTICE IS GIVEN that a scheduling order will be entered.

Dated August 1, 2022.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE